IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DR. KATHY MINNICH LEH** | : | **Civil No. 22-CV-548** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **NORTHEASTERN SCHOOL** | : | |
| **DISTRICT, ET AL.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the Court is the motion to dismiss the amended complaint filed by Defendants Northeastern School District and Dr. Stacey Sidle. (Doc. 15.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.     BACKGROUND

This case arises from Plaintiff Kathy Minnich Leh's claims that her former employer and former supervisor, Defendants Northeastern School District and Superintendent Dr. Stacey Sidle, retaliated against her for initiating a March 2020 action in this court against them alleging, among other things, employment discrimination and hostile work environment. *See Kathy Minnich v NESD*, *et al*., Civil No. 20-CV-378.

The amended complaint avers that after filing the initial action, a separate case, on March 4, 2020, Dr. Leh experienced further retaliation and harassment at the hands of the district and Dr. Sidle. It avers that in late May and June 2020, Dr. Leh, who then served as a social worker with the NESD, received inquiries from Dr. Sidle and the school board about whether she had inappropriate communications

1

with a student's family while serving as a substitute school psychologist. (*Id*. ¶ I4.) According to the amended complaint, Dr. Leh's communications with the family came in the discharge of her ordinary responsibilities and were not inappropriate, and the inquiries were retaliatory measures which were designed to prevent her from receiving a future school psychologist position. (*Id*. ¶ 14.)

On September 8, 2020, Dr. Leh applied for the position of school psychologist at NESD. (*Id.* ¶ 29.) Discussions among board members revealed that internal candidates were to be given hiring priority, and Dr. Leh was not only qualified for the position, but she also had recent and relevant experience serving as a long-term substitute for the district. (*Id*. ¶¶ 11, 22.) After interviewing for the school psychologist position in October 2020, one of the interview panelists and an NESD principal told Dr. Leh she was "heads and tails above" the only other candidate interviewed, who was not a school district employee. (*Id*. ¶ 29.)

On October 7, 2020, Dr. Leh learned that the other candidate was being recommended to the School Board for the position. (*Id*. ¶ 31.) She thereafter reviewed text messages from an interview panelist, who like the other panelist was believed to be supportive of her candidacy, which said that Dr. Leh wouldn't get the job "because she is not a yes man," and that members of the interview panel "weren't asked to weigh in on their desired candidate." (*Id.* ¶¶ 31-32.)

On October 19, 2020, Dr. Sidle made a formal recommendation to the School Board to hire the other candidate for the school psychologist position. (*Id*. ¶ 33.) In doing so, he erroneously represented that all members of the interview panel had been asked for their recommendation, and that the candidate had been unanimously or near unanimously chosen. (*Id*.) Two board members voted against Dr. Sidle's recommendation due to a potential "contractual violation." (*Id*.) According to the amended complaint, the NESD's Collective Bargaining Agreement obligates it to give priority to qualified internal candidates. (*Id*. ¶ 34.)

At some point, NESD removed from its public YouTube page certain portions of videos of school district meetings in which Dr. Leh was discussed. (*Id*. ¶ 22.) Removal of the material violated NESD's transparency policies. (*Id*.)

On October 20, 2020, Dr. Leh contacted her physician "to relay that she was not in a good state of mind due to the harassment and undermining of her opportunity." (*Id*. ¶ 35.) She was diagnosed with situational anxiety and subsequently took an FMLA leave of absence in accordance with her physician's recommendation. (*Id*.) Dr. Leh thereafter tendered her resignation, which became effective January 27, 2021. (*Id*. ¶ 36.)

In August 2021, Dr. Leh filed a dual charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRC"). (*Id.* ¶ 43.) The EEOC issued a right to sue letter in March 2022. (*Id.*)

In April 2022, Dr. Leh initiated this action by filing a complaint, which she subsequently amended. (Doc. 1; Doc 13.) Count 1 of the amended complaint asserts Title VII retaliation against NESD. (Doc. 13 p. 15.) Count 2 asserts retaliation under the PHRA against NESD and Dr. Sidle. (*Id.* p. 16.) Count 3 alleges ADA hostile work environment against NESD. (*Id.* p. 17.) Count 4 asserts hostile work environment under the PHRA against NESD and Dr. Sidle. (*Id.* p. 19.)

Defendants have filed a motion to dismiss. (Doc. 15.) The motion has been fully briefed and is ripe for disposition.

## II.   STANDARD OF LAW

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc*., 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp*., 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In*

*re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.   DISCUSSION

As to Count 1 alleging Title VII retaliation against the NESD, Defendants' motion correctly argues that Dr. Leh failed to exhaust her administrative remedies. Dr. Leh's EEOC complaint did not mention Title VII or provide any reason to conclude that she may have been retaliated against in violation of the statute's protections. (*See* Doc. 15-6.) While the administrative charge may have advanced many of the same allegations that Dr. Leh now seeks to prove under Title VII, it did

not so much as suggest that she was subjected to discrimination, retaliation, or a hostile work environment due to any protected class status that falls within the purview of the statute or comparable provisions of the PHRA.[1] *See Simko v. United States Steel Corp*, 992 F.3d 198, 211 (3d Cir. 2021) ("[F]actual overlap alone . . . does not guarantee that the new allegations are encompassed by the original charge if they do not fall within the 'gravamen' of the initial charge.") *cert. denied sub nom*. 142 S. Ct. 760 (2022). Count 1 alleging retaliation under Title VII must therefore be dismissed without prejudice, because it does not fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).

So too are Defendants correct that the amended complaint fails to adequately allege hostile work environment claims under the ADA and PHRA, as asserted in Counts 3 and 4. To establish a hostile work environment claim under the statutes, the plaintiff must prove that: "(1) she is a qualified individual with a disability under the ADA; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to

---

[1] Dr. Leh sufficiently exhausted her claim under the PHRA by citing the statute in her administrative charge, and by advancing allegations that would be expected to give rise to an investigation of whether NESD violated the PHRA's protections for employees who oppose discrimination based on non-job-related disability. *See* 43 Pa. Stat. & Cons. Stat. § 955(a).

create an abusive working environment; and (5) that her employer knew or should have known of the harassment and failed to take prompt effective remedial action." *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 201–02 (3d Cir. 2018) (quoting *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)) (brackets omitted). The hostile work environment must be "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Ballard-Carter v. Vanguard Grp.*, 703 F. App'x 149, 152 (3d Cir. 2017) (internal quotations and citations omitted). Hostility is assessed both objectively and subjectively, and based on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017); *see Ballard-Carter v. Vanguard Grp.,* 703 F. App'x 149, 152 (3d Cir. 2017); *Hatch*, 755 F. App'x at 202.

Here, the conduct alleged in the amended complaint does not rise to the level of a hostile work environment as a matter of law. Defendants' purported actions in wrongfully passing Dr. Leh over for a job and baselessly accusing her of inappropriate communications are insufficiently severe and occurred with relative infrequency. The amended complaint does not allege facts suggesting Dr. Leh was yelled at, berated, mocked, physically threatened, or even subjected to a stray

remark; and without diminishing the seriousness of any subjective shame Dr. Leh experienced, there is no indication she was subjected to public humiliation or otherwise the victim of any incessant harassment. Dr. Leh therefore cannot establish the fourth element of a hostile work environment claim and Count 3 and Count 4 will be dismissed with prejudice.[2]

Defendants' argument that Dr. Leh's remaining retaliation claims are barred by res judicata is less persuasive.[3] Res judicata precludes a party from relitigating the same claims, against the same parties, after those claims have already been decided on the merits. *See CoresStates Bank, N.A. v. Huls America, Inc*., 176 F.3d 187, 194 (3d Cir. 1999). Three elements are required for the doctrine to take effect: (1) a final judgment on the merits must have been rendered in a prior suit; (2) the same parties or their privies must have been involved in both suits; and (3) the subsequent suit must be based on the same cause of action as the original. *Lubrizol Corp. v. Exxon Corp*., 929 F.2d 960, 963 (3d Cir. 1991). In this case, res judicata does not apply because Dr. Leh's retaliation claim is different than those asserted in the initial action. Dr. Leh's initial suit alleged she was retaliated against for submitting an FMLA request and offering testimony at a hearing. *See Minnich v. Ne.*

---

[2] The circumstances about which Dr. Leh complains fall substantially short of those required to establish a hostile work environment claim, particularly as it relates to the severity of Dr. Leh's alleged mistreatment. Amending these claims would therefore be futile.

[3] Whether res judicata bars Dr. Leh's claims for hostile work environment presents a closer call, but the court need not decide the issue because those claims fail on the merits.

*Sch. Dist.*, No. 1:20-CV-00378, 2021 WL 3166013, at *1 (M.D. Pa. July 27, 2021).

Dr. Leh's present claims aver she was retaliated against for filing her initial suit,

claims which could not have been asserted in the amended complaint in the first case

in light of the exhaustion requirement. Given the lack of complete identity between

causes of action, Dr. Leh's remaining retaliation claims are not barred by res

judicata.[4]

Finally, Defendants' argument that the amended complaint fails to establish

the causation element of Dr. Leh's PHRA retaliation claims is also without merit. A

plaintiff may satisfy causation by showing "unusually suggestive" temporal

proximity between the protected activity and adverse employment action. *Marra v.*

*Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). "Where the time

between the protected activity and adverse action is not so close as to be unusually

---

[4] In their briefs, the parties argue over whether Dr. Sidle is entitled to high public official immunity against common law claims. But the amended complaint does not assert any common law claims, and there is no reason to conclude that any particular cause of action lies under the facts in the amended complaint. *See generally Gillispie v. RegionalCare Hosp. Partners Inc*., 892 F.3d 585, 597 (3d Cir. 2018) ("We have previously determined that Pennsylvania law does not recognize a common law cause of action for violating public policy if a statutory remedy exists."); *McLaughlin v. Gastrointestinal Specialists, Inc.,* 750 A.2d 283, 287 (Pa. 2000) ("[A]s a general proposition, the presumption of all non-contractual employment relations is that it is at-will and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth."); *Gjeka v. Delaware Cnty. Cmty. Coll.*, No. 12-CV-4548, 2013 WL 2257727, at *9 (E.D. Pa. May 23, 2013) ("[A] 'hostile environment' claim does not appear to be a cognizable cause of action under Pennsylvania common law."). Even more curious, while the parties' briefs devote considerable attention to arguing whether the amended complaint sufficiently alleges municipal liability under Section 1983, the pleading itself asserts no such claim, expressly or impliedly. The court has no reason to address the substance of these disputes.

suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole." *Id.* (citations omitted).

Here, the approximate seven-month period between Dr. Leh's protected activity and when she was turned down for the school psychologist position is not "unusually suggestive" in and of itself.[5] However, the amended complaint also alleges that just two months after her protected activity, Dr. Leh began receiving baseless inquiries from Dr. Sidle and NESD board members which expressly or impliedly accused her of engaging in inappropriate communications with a student's family. It avers that the unfounded inquiries were made at Dr. Sidle's behest and designed to undermine Dr. Leh's standing in the district and prevent her from obtaining a future school psychologist position. While there is no indication that the communications were relentless or particularly incessant, it does appear that they spanned multiple months in Summer 2020, and Dr. Leh's contention that they lacked any basis in fact must be accepted as true. (*See* Doc. 13 ¶ 14.) This intervening period

---

[5] The seventh month period is nevertheless minimally suggestive. It appears to mark Dr. Sidle's first opportunity, after the filing of the first action, to prevent Dr. Leh from obtaining a job she wanted.

of antagonism, together with the seven-month proximity between the protected activity and adverse action, nudges Dr. Leh's retaliation claims over the line and satisfies her burden for causation at this stage.

## IV.   **<u>CONCLUSION</u>**

For the reasons set forth above, Defendants' motion to dismiss will be denied with respect to Count 2 and granted with respect to Counts 1, 3, and 4. An appropriate order shall follow.


Dated: July 24, 2023.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge
